# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HANS KISSLE INC,**

     **Plaintiff,**

     **v.**                                  **Case No. 24-CV-484-SCD**

**ECHO LAKE FOODS INC,**

     **Defendant.**

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS I, II, AND III OF THE PLAINTIFF'S COMPLAINT

       This case is about precooked scrambled eggs that Echo Lake Foods Inc. sold to Hans Kissle Inc. for use as an ingredient in a breakfast taco filling that Hans Kissle intended to make and sell to a retail customer. Hans Kissle alleges that the cooked eggs supplied by Echo Lake Foods were contaminated, and it filed this lawsuit to recover contractual and tort damages. Echo Lake Foods has moved to dismiss the tort claims under Wisconsin's economic loss doctrine, which generally prohibits a commercial purchaser from recovering in tort damages that are solely economic in nature. Hans Kissle contends that the economic loss doctrine does not apply in this case because the complaint alleges damage to property other than the contaminated eggs and that the contaminated eggs presented an unreasonable danger. However, it can be inferred from the allegations in the complaint that the contaminated eggs did not harm any other property and that Hans Kissle should have anticipated the risk of food contamination. Because Hans Kissle alleges that the contaminated eggs were inferior in quality and did not work for their intended purpose, the economic loss doctrine bars the company's tort claims. Accordingly, I will grant Echo Lake Foods' motion.

## BACKGROUND

Hans Kissle, Inc., is a Massachusetts corporation that produces, manufactures, processes, and packages food products that it sells to customers throughout the United States. Compl. ¶¶ 1, 6, ECF No. 1. One of those products was a breakfast taco filling predominantly composed of precooked scrambled eggs. *Id.* ¶¶ 14–15. Hans Kissle got the cooked eggs from Echo Lake Foods, Inc., a Wisconsin corporation. *Id.* ¶¶ 2, 8, 17. When Hans Kissle discovered that the cooked egg products were contaminated with Listeria, E. coli, and other bacteria, the company stopped using Echo Lake Foods' eggs, cancelled all remaining orders, and returned all unused product. *Id.* ¶¶ 20–24.

In April 2024, Hans Kissle sued Echo Lake Foods in federal court for (I) negligence, (II) negligent misrepresentation, (III) product liability, (IV) breach of implied warranty of fitness for a particular purpose, (V) breach of implied warranty of merchantability, and (VI) equitable indemnity. Compl. ¶¶ 37–75.[1] Specifically, the complaint alleges that Echo Lake Foods knew, or had reason to know, that Hans Kissle relied on Echo Lake Foods to provide cooked egg products that were produced under sanitary conditions, safe, and fit for human consumption. *Id.* ¶ 27. The complaint further alleges that Echo Lake Foods misrepresented to Hans Kissle that its cooked egg products were free of microbial contaminants and that it complied with applicable food safety regulations. *Id.* ¶¶ 25–26. According to the complaint, the contaminated eggs were unreasonably dangerous, unmerchantable, unfit for their intended purpose, and illegal to introduce into interstate commerce. *Id.* ¶ 32. The complaint alleges that the contaminated eggs damaged Hans Kissle's raw materials, finished products that

---

[1] The matter was reassigned to this court after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 12, 13.

incorporated the contaminated egg products, and other finished products that were made on equipment that had been contaminated by the cooked egg products. *Id.* ¶¶ 30–35. According to the complaint, the damage to Hans Kissle's finished breakfast taco filling and cross-contaminated products was separate from and extrinsic to the defective cooked egg products. *Id.* ¶ 31. Finally, the complaint alleges that Hans Kissle had to halt production to identify the source of the contamination and destroy finished products that contained the contaminated cooked egg products or were cross contaminated by them. *Id.* ¶ 36. The complaint alleges that, as a result of the contaminated eggs, Hans Kissle incurred extra expenses and business interruption losses and lost profits and other business opportunities.

On June 21, 2024, Echo Lake Foods moved to dismiss Counts I, II, and III of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Def.'s Mot., ECF No. 15; Def.'s Br., ECF No. 16. Hans Kissle filed a brief in opposition to the motion. *See* Pl.'s Resp., ECF No. 21. And Echo Lake Foods submitted a reply brief. *See* Def.'s Reply, ECF No. 22.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Zemeckis v. Global Credit & Collect. Corp.*, 679 F.3d 632, 634–35 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'" *Id.* at 635 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept as true

3

all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 980 (7th Cir. 2020) (citing *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019)).

## DISCUSSION

Echo Lake Foods contends that Wisconsin's economic loss doctrine bars Hans Kissle's tort claims.[2] "The economic loss doctrine is a judicially created doctrine intended to preserve the boundary between tort and contract." *Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 13, 699 N.W.2d 167, 171. It generally "precludes a purchaser of a product from employing negligence or strict liability theories to recover from the product's manufacturer loss which is solely economic." *Wausau Tile, Inc. v. Cty. Concrete Corp.*, 593 N.W.2d 445, 451 (Wis. 1999) (citing *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 437 N.W.2d 213, 217–18 (Wis. 1989)). "Economic loss is the loss in a product's value which occurs because the product 'is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" *Id.* (quoting *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179, 181 (Wis. 1991)).

Here, Hans Kissle alleges that the contaminated scrambled eggs supplied by Echo Lake Foods caused millions of dollars in costs, losses, and damages, namely "extra expenses, lost profits, lost opportunities, and business interruption losses." *See* Compl. ¶¶ 36, 39, 46, 55. Those losses seem purely economic in nature. Nevertheless, Hans Kissle maintains that the economic loss doctrine does not bar its tort claims because the complaint alleges that the contaminated eggs caused damage to property other than the eggs themselves. Hans Kissle

---

[2] The parties appear to agree that Wisconsin substantive law governs this diversity action. *See* Def.'s Br. 3–9; Pl.'s Resp. 3–11.

also insists that the economic loss doctrine does not apply in this case because the contaminated eggs were unreasonably dangerous and posed a health risk to consumers.

## I.    The Other Property Exception Does Not Apply

The economic loss doctrine precludes recovery in tort for "damages to the product itself and economic losses flowing therefrom." *Sunnyslope Grading*, 437 N.W.2d at 213; *see also Grams*, 699 N.W.2d at 173 (citing *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986)). However, the doctrine "does not preclude a product purchaser's claims of . . . damage to property other than the product itself." *Wausau Tile*, 593 N.W.2d at 451 (citing *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 573 N.W.2d 842, 845 (Wis. 1998); *Northridge*, 471 N.W.2d at 186; *Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.*, 444 N.W.2d 743, 747 (Wis. Ct. App. 1989)).[3] This is known as the "other property" exception to the economic loss doctrine. *See Grams*, 699 N.W.2d at 173.

Hans Kissle argues that the complaint contains multiple allegations of damage to property other than the contaminated scrambled eggs. *See* Pl.'s Resp. 3 (citing Compl. ¶¶ 30–31, 33–36). Specifically, the complaint alleges that Hans Kissle had to destroy finished products that incorporated the contaminated eggs (i.e., the breakfast taco filling), as well as raw materials and other finished products that were made on equipment that had been spoiled by the contaminated eggs (i.e., cross contamination). The complaint alleges that this damage was separate from and extrinsic to the defective, contaminated eggs.

---

[3] The economic loss doctrine also "does not preclude a product purchaser's claims of personal injury." *Wausau Tile*, 593 N.W.2d at 451. The complaint here, however, does not allege that the contaminated egg products harmed anyone. *See* Compl. ¶¶ 5–36. And Wisconsin law does not permit recovery in tort for the mere risk of harm to others. *See Raytheon Co. v. McGraw-Edison Co., Inc.*, 979 F. Supp. 858, 868 (E.D. Wis. 1997) (finding that "the mere risk of harm to the public or the environment . . . is not sufficient to transpose . . . economic losses into tort damages").

Echo Lake Foods argues that the complaint's perfunctory references to damaged property are insufficient to satisfy the "other property" exception. As support, Echo Lake Foods cites several Wisconsin cases that it says have sharply limited the scope of the exception. *See* Def.'s Br. 6–9.

"Wisconsin courts use two tests to determine whether damaged property is 'other property': the 'integrated system' test and the 'disappointed expectations' test." *Foremost Farms USA Coop. v. Performance Process, Inc.*, 2006 WI App 246, ¶ 1, 726 N.W.2d 289, 291; *see also Grams*, 699 N.W.2d at 174 (noting that the state's "appellate decisions have repeatedly used techniques to limit the scope of the 'other property' exception without eliminating it"). The Wisconsin Court of Appeals eloquently explained in *Foremost Farms* how these two tests work in Wisconsin, so I quote extensively from that decision.

> Under the "integrated system" test, [courts] look to see whether the allegedly defective product is a component in a larger system. Once a part becomes integrated into a completed product or system, the entire product or system ceases to be "other property" for purposes of the economic loss doctrine. If a product has no function apart from its value as a part of a larger system, the larger system and its component parts are not "other property."
>
> . . .
>
> If damaged property is not "other property" under the "integrated system" test, the economic loss doctrine applies and tort claims are barred. The "other property'" inquiry ends. However, if the damaged property appears to be "other property" under the "integrated system" test, then the "disappointed expectations" test is applied.
>
> . . .
>
> The "disappointed expectations" test is directed at determining whether the purchaser should have anticipated the need to seek protection against loss through contract. This test focuses on the expected function of the product and whether, from the purchaser's perspective, it was reasonably foreseeable that the product could cause the damage at issue.
>
> . . .

6

[T]he "disappointed expectations" test is met when prevention of the subject risk was one of the contractual expectations motivating the purchase of the defective product. Further, the determination of whether particular damage qualifies as damage to "other property" [under the "disappointed expectations" test] turns on the parties' expectations of the function of the bargained-for product.

. . .

The "disappointed expectations" test asks whether the damage was "reasonably foreseeable" should the purchased product prove to be defective, such that the purchaser, at least in theory, could have obtained protection in contract. Because the focus is on "reasonable foreseeability," it follows that an objective standard applies: Should a reasonable purchaser in the plaintiff's position have foreseen the risk?

*Foremost Farms*, 726 N.W.2d at 294–95 (internal quotation marks and citations omitted).

Echo Lake Foods maintains that the alleged damage to the finished breakfast taco filling product and to other materials and products that came into contact with the contaminated eggs do not constitute "other property" under either the integrated system test or the disappointed expectations test.

## A. Integrated system test

Echo Lake Foods first argues that the finished breakfast taco filling does not constitute other property because it was an integrated system comprised of several component parts, including the contaminated scrambled eggs. Hans Kissle did not respond to this argument despite Echo Lake Foods spending nearly two pages of its ten-page brief on it and thoroughly discussing a Wisconsin appellate decision in support. *See* Def.'s Br. 6–8. Thus, Hans Kissle has waived (or at least forfeited) any opposition to Echo Lake Foods' argument that the finished breakfast taco filling does not constitute other property for purposes of avoiding the economic loss doctrine. *See, e.g.*, *Bourgeois v. Watson*, 977 F.3d 620, 629–32 (7th Cir. 2020) (explaining the difference between waiver and forfeiture).

Waiver or forfeiture aside, a review of cases applying the integrated system test shows that the finished breakfast taco filling was not separate property. For example, in *Wausau Tile*, the Wisconsin Supreme Court held that the economic loss doctrine precluded a manufacturer of concrete pavers from suing its cement and aggregate suppliers in tort because the pavers were not property other than the defective product (i.e., the cement). 593 N.W.2d at 450–54. The court explained that "when harm results from a defective component of a product, the product itself is deemed to have caused the harm." *Id.* at 453 (citing *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 883 (1997)). Applying that rule, the court found that "the pavers were integrated systems comprised of several component materials, including [the defendant's] cement" and endorsed the lower court's determination that the defective cement was "an indistinguishable, integral part of the pavers" that couldn't "be separately identified from the finished product." *Id.* at 453. That inference, according to the court, reasonably followed from the facts alleged in the complaint; in other words, dismissal was appropriate at the motion-to-dismiss stage.

Other examples of component materials of an integrated system include defective windows installed in a condominium complex, *Bay Breeze Condo. Ass'n v. Norco Windows, Inc.*, 2002 WI App 205, 651 N.W.2d 738; a defective replacement gear for a printing press, *Cincinnati Ins. Co. v. AM Int'l, Inc.*, 591 N.W.2d 869 (Wis. Ct. App. 1999); a defective steam generator used as part of a power generating system, *Midwhey Powder Co., Inc. v. Clayton Indust.*, 460 N.W.2d 426 (Wis. Ct. App. 1990); a defective tail rotor drive system of a helicopter, *Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft*, 849 F. Supp. 666 (E.D. Wis. 1994); contaminated enzymes used in nutritional supplements, *Schwabe N. Am., Inc. v. Cal-India Foods, Int'l, Inc.*, No. 14-CV-235, 2014 WL 7345812, 2014 U.S. Dist. LEXIS 176657 (E.D.

Wis. Dec. 23, 2014); and contaminated red pepper used in a spice blend, *Adams Extract & Spice, LLC v. Van De Vries Spice Corp.*, No. 11-720 (JAP), 2011 WL 6756973, 2011 U.S. Dist. LEXIS 147851 (D.N.J. Dec. 23, 2011).

It can be inferred from the allegations in the complaint here that the contaminated scrambled eggs were an integral component of the finished breakfast taco filling product. The complaint alleges that the cooked eggs supplied by Echo Lake Foods were intended for incorporation into breakfast products destined for human consumption. Compl. ¶ 14. The complaint further alleges that the breakfast taco filling was predominantly composed of cooked eggs. *Id.* ¶ 15. Thus, the scrambled eggs were the key ingredient in the breakfast taco filling, which served no function without the eggs. Because the alleged damage to the finished breakfast taco filling was caused by the contaminated eggs, an integral component of the completed product, the breakfast taco filling does not constitute "other property" for purposes of the economic loss doctrine.

### B. Disappointed expectations test

Echo Lake Foods also argues that the finished breakfast taco filling and the other, cross contaminated products do not constitute other property because it was reasonably foreseeable that the scrambled eggs could be contaminated. As support, Echo Lake Foods cites *Grams*, a case involving an allegedly defective milk substitute product that harmed young cows intended for resale. 699 N.W.2d at 169–70. The trial court granted summary judgment in favor of the milk manufacturer, finding that the economic loss doctrine barred the calf sellers' tort claims, and the court of appeals affirmed.

On review, the Wisconsin Supreme Court determined that the integrated system test was an ill fit for determining whether the damage to the cows constituted "other property," so

9

it turned to the disappointed expectations test. *Grams*, 699 N.W.2d at 173–79. The court explained that the disappointed expectations test involves two steps: (1) determining the contractual expectations of the parties, and (2) inquiring whether the plaintiff's claim is about disappointment with those expectations. *Id.* at 179. Applying those steps, the court concluded that the calf sellers expected the milk substitute to nourish their calves, but the product didn't work as intended; instead, it weakened several calves' immune systems and killed others. Because the tort claims were based on disappointed expectations, the court held that the damage to the calves did not fall within the scope of the "other property" exception to the economic loss doctrine. *Id.* at 179–80.

Here, the allegations in the complaint show that the alleged damage to Hans Kissle's raw materials and finished products involves disappointment in the failure of the scrambled eggs to live up to their intended purpose. The complaint alleges that Hans Kissle expected Echo Lake Foods to supply cooked egg products for use in the production of a consumable breakfast taco. *See* Compl. ¶¶ 14–17, 27–28. The complaint further alleges that the cooked egg products supplied by Echo Lake Foods could not be used for that intended purpose, as they tested positive for Listeria, E. coli, and other bacteria, and that Hans Kissle was disappointed with that result. *See id.* ¶¶ 18–26. Hans Kissle allegedly was forced to destroy the contaminated cooked egg products, finished products that contained the contaminated eggs, and other finished products that were manufactured on contaminated equipment. *See id.* ¶¶ 30–36.

Such a result was, or should have been, reasonably foreseen by Hans Kissle. Hans Kissle is in the food production business, and it required Echo Lake Foods to test for microbial contaminants. *See* Compl. ¶¶ 6–7, 19. Thus, avoiding contamination—to both the finished breakfast taco filling and other materials—was a contemplated concern. In other words, it was

10

within the parties' expectations that if Echo Lake Foods supplied Hans Kissle with contaminated eggs, its finished products that incorporated the eggs and other materials that came into contact with them would have to be destroyed. Because the alleged damage to the finished products, equipment, and raw materials arose from disappointed expectations of a commercial bargain, those damages do not constitute "other property" for purposes of the economic loss doctrine. The fact that Hans Kissle was extremely disappointed does not change this finding. *See Schwabe*, 2014 U.S. Dist. LEXIS 176657, at *7–8 ("Surely, it was . . . within the parties' expectations in this case that if [the defendant] supplied [the plaintiff] with adulterated enzymes, its own dietary supplements would have to be recalled."); *see also Treehouse Foods, Inc. v. Sunopta Grains & Foods Inc.*, No. 18 C 1412, 2019 WL 1429337, 2019 U.S. Dist. LEXIS 54870, at *23–32 (N.D. Ill. Mar. 29, 2019) (finding damage to the plaintiff's finished products, equipment, and raw materials did not constitute other property because the logical and expected result of receiving contaminated sunflower kernels was that those materials would also become contaminated); *Nationwide Agribusiness Ins. Co. v. USG Corp.*, No. 23 C 1988, 2024 WL 342592, 2024 U.S. Dist. LEXIS 16024, at *16–19 (N.D. Ill. Jan. 30, 2024) (finding it reasonably foreseeable that a contaminated pet food ingredient would damage the finished pet food product and other ingredients used to make the pet food).

## II.  The Public Safety Exception, To the Extent There Is One, Does Not Apply

Hans Kissle also contends that the economic loss doctrine does not apply in this case because the complaint alleges that the contaminated cooked egg products were unreasonably dangerous and posed a public safety risk. As support, Hans Kissle relies primarily on *Northridge*, a case involving an asbestos-containing fireproofing material used as insulation in several shopping centers. 471 N.W.2d at 180. The trial court granted the seller's motion to

dismiss the mall owners' tort claims, finding that the owners' alleged damages were solely economic in nature and that the complaint did not allege damage to property other than the defective fireproofing material.

The Wisconsin Supreme Court disagreed, concluding that the complaint *did* allege damage to other property—the shopping centers. *Northridge*, 471 N.W.2d at 180, 184–87. The court noted that "under Wisconsin strict products liability law a plaintiff may recover for physical harm to property caused by a defect in the product that presents an unreasonable danger to persons or property." *Id.* at 181. The court then analyzed whether the economic loss doctrine barred the mall owners' strict liability and negligence claims. *See id.* at 181–87. The court noted that the complaint did not allege that the insulation was inferior in quality or failed to work for its intended purpose (preventing fires)—"the essence of a claim for economic loss." *Id.* at 186. Rather, the complaint alleged that the insulation released toxic substances in the environment, "thereby causing damage to the building and a health hazard to its occupants." *Id.* The court held that the allegation that the "asbestos-containing product physically harmed the plaintiffs' building is the type of injury which is actionable under claims for relief in strict products liability and negligence." *Id.* It reversed the summary judgment order and remanded for factual development on whether the fireproofing material in fact caused damage to property other than the product itself. *Id.* at 187.

Hans Kissle seems to believe that *Northridge* established an exception to the economic loss doctrine for unreasonably dangerous products. However, in *Wausau Tile*, the Wisconsin Supreme Court clarified that "*Northridge* does not create a broad 'public safety exception' to the economic loss doctrine." 593 N.W.2d at 458. The court further noted that "[f]ederal courts have read *Northridge* narrowly, refusing to apply its rule in cases not involving asbestos or other

inherently dangerous contaminants." *Id.* at 458–59 (citing *Midwest Helicopters*, 849 F. Supp. at 671–72). Ultimately, the court found that *Northridge* was inapplicable because defective concrete pavers are not "inherently dangerous to the health and safety of humans" and because the plaintiff in *Wausau Tile* was not "a third-party owner of property damaged by the defective pavers or . . . a pedestrian injured by the pavers." *Id.* at 459.

Hans Kissle does not cite any case finding that *Northridge* allows tort claims related to contaminated food products. And for good reason. "[A] careful reading of *Northridge* reveals that it did not create a public safety exception at all." *Schwabe*, 2014 U.S. Dist. LEXIS 176657, at *9. The economic loss doctrine did not apply in *Northridge* because the complaint in that case alleged damage to property (the shopping centers) other than the defective product itself (the fireproofing material). In contrast, and as explained above, the complaint in our case does not allege damage to other property; it alleges damage to the defective product itself (the contaminated eggs), damage to an integrated system (the finished products that contained the contaminated eggs), and damage that was reasonably foreseeable (other, cross contaminated products and materials). Put another way, unlike the plaintiff in *Northridge*, Hans Kissle does allege that the defective product failed to work for its intended purpose. *Northridge* therefore is distinguishable and does not require a different result here.

Relatedly, Hans Kissle argues that Echo Lake Foods' motion should be denied for public policy and safety reasons, asserting that there's a significant public policy interest in holding companies accountable for failing to fulfill their legal obligation to produce safe foods. Hans Kissle's public policy argument, however, ignores the policies that underlie the economic loss doctrine: preserving the fundamental distinction between tort law and contract law, protecting commercial parties' freedom to allocate risk by contract, and encouraging the

13

party best situated to assess the risk of economic loss (i.e., the purchaser) to assume, allocate, or insure against that risk. *See Wausau Tile*, 593 N.W.2d at 451 (citing *Daanen*, 573 N.W.2d at 846). Hans Kissle also seems to imply that, if its tort claims are dismissed, Echo Lake Foods will escape liability. Not so. Hans Kissle may still seek to hold Echo Lake Foods accountable via traditional principles of contract law. Put simply, I am not persuaded that the economic loss doctrine is inapplicable in food safety cases, especially where the allegedly dangerous food never made it to consumers.

## CONCLUSION

At bottom, Hans Kissle's tort claims are based on the company's disappointment that the precooked scrambled eggs it received from Echo Lake Foods could not be used for Hans Kissle's breakfast taco filling. The complaint does not allege that the contaminated eggs caused damage to "other property." The economic loss doctrine therefore bars Hans Kissle's tort claims. Accordingly, for all the foregoing reasons, the court **GRANTS** the defendant's motion to dismiss counts I, II, and III of the plaintiff's complaint, ECF No. 15.

**SO ORDERED** this 13th day of September, 2024.

STEPHEN C. DRIES
United States Magistrate Judge